IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WALL RECYCLING, LLC                )
                                   )
         Plaintiff,                )
                                   )
     v.                            )      1:20CV371
                                   )
3TEK GLOBAL, LLC,                  )
                                   )
         Defendant.                )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISRATE JUDGE

This matter is before the Court upon four motions: (1) Defendant's Motion for Leave to File First Amended Answer (Docket Entry 31), (2) Plaintiff's Motion to Compel Discovery (Docket Entry 35), (3) Defendant's Motion to Exclude Expert Opinions of Robert Brewer (Docket Entry 37), and (4) Defendant's Motion to Exclude Plaintiff's Supplemental Discovery (Docket Entry 38). All four matters are ripe for disposition. For the following reasons, the undersigned recommends denying Defendant's Motion to File First Amended Answer, denies Plaintiff's Motion to Compel Discovery, denies without prejudice Defendant's Motion to Exclude Expert Opinions of Robert Brewer, and denies Defendant's Motion to Exclude Plaintiff's Supplemental Discovery.

I.     BACKGROUND

Plaintiff initiated this matter on March 23, 2020 in the General Court of Justice, Superior Court Division, of Durham County, North Carolina. (*See* Complaint ("Compl."),

Docket Entry 2.) Defendant filed a petition of removal in this Court on April 24, 2020, invoking diversity jurisdiction. (*See* Docket Entry 1.)

As set forth in the Complaint, Plaintiff is a recycling company that offers scrap metal recycling services to industrial clients in North Carolina. (Compl. ¶ 8.) Defendant manufactures scrap metal processing equipment, including industrial metal shredders. (*Id.* ¶ 9.) Plaintiff alleges that on February 28, 2019, the parties entered into a contract (the "February Agreement") whereby Plaintiff would purchase an industrial metal shredder (the "NEXT Shredder") for the price of $2,299,500. (*Id.* ¶ 10.) Under the February Agreement, Plaintiff had the option to make a $100,000 deposit in exchange for a right of first refusal on the second and sixth deliveries of NEXT Shredders produced by Defendant. (*Id.* ¶ 20.) On April 18, 2019, Plaintiff exercised its right of first refusal for the second delivery of a NEXT Shredder from Defendant, notified Defendant of this in writing, and paid Defendant an additional $359,900 deposit as required by the February Agreement. (*Id.* ¶¶ 24-25.) Defendant then acknowledged Plaintiff's exercise of the right of first refusal, confirmed the NEXT Shredder would be shipped to Plaintiff by September of 2019, and sent a proposed sales contract to Plaintiff. (*Id.* ¶¶ 26-28.) After some communication between the parties, Plaintiff did not sign the contract and Defendant pledged a firm delivery date for the NEXT Shredder, despite Plaintiff's failure to execute the proposed sales contract. (*Id.* ¶ 28-29.) After several delays in shipment, Plaintiff and Defendant modified the February Agreement, providing a discount and other benefits to Plaintiff as a result of the delayed shipment. (*Id.* ¶ 36.) In February of 2020, Defendant informed Plaintiff that it would not send Plaintiff a NEXT

Shredder because the parties had not entered into a contract. (*Id.* ¶¶ 39-40.) Plaintiff brings a breach of contract claim against Defendant based upon the February Agreement. (*See id.*)

After removing this action to this Court, Defendant filed a motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. (Docket Entry 6.) In the alternative, it sought to transfer venue to the Northern District of Texas. (*Id.*) The Court denied the motion (Docket Entry 15) and Defendant thereafter filed an answer (Docket Entry 16).

## II. DISCUSSION

### A. Defendant's motion for leave to file its first amended answer

Defendant moves the Court for leave to file its first amended answer to assert the additional affirmative defense that "all or part of the contract sued upon by [Plaintiff] is barred by the statute of frauds." (Docket Entry 31 at 1-2.) Plaintiff has filed a brief in opposition to Defendant's motion for leave to file its first amended answer, arguing Defendant's motion is based on a false conclusion and is untimely and futile. (*See* Docket Entry 33.) Defendant has filed a reply brief. (Docket Entry 42.)

The Joint 26(f) Report filed by all parties and adopted by the Court provides that "[t]he parties should be allowed to request leave to join additional parties or amend pleadings within thirty (30) days following the date on which the pleadings are closed. After this date, the Court will consider, *inter alia*, whether the granting of leave would delay the trial." (Docket Entry 20 at 3.) This gave the parties until December 12, 2020, to file any amended pleadings. On July 12, 2021, Defendant deposed Daniel Wall, corporate representative for Plaintiff. (*See* Docket Entry 33-2 at 1.) During the deposition, Daniel Wall made statements that led Defendant to

3

believe Plaintiff may argue that the parties entered into an oral agreement in addition to the February Agreement. (*See* Docket Entries 42, 42-3.) Defendant then filed the instant motion on August 19, 2021. (*See* Docket Entry 31.)

Here, Defendant's motion for leave to amend its answer was filed after the deadline for amendments had passed, therefore Defendant must meet two requirements for the Court to grant the motion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). First, Defendant must make a showing of good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b). *Belcher v. W.C. English Inc.*, 125 F. Supp. 3d 544, 548 (M.D.N.C. 2015); *see also Nourison Rug Corp.,* 535 F.3d. at 298. If the moving party is unable to make a showing of good cause, the motion fails. *See Halpern v. Wake Forest University Health Sciences*, 268 F.R.D. 264, 274 (M.D.N.C. 2010). Second, even if Defendant meets the more rigorous good cause standard, it can only amend the pleadings if the Court grants leave to amend or by consent under Federal Rule of Civil Procedure 15(a). *DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004).

A court may find good cause where a defendant exercising reasonable diligence would not have discovered the evidence supporting the proposed amendment until after the amendment deadline. *Belcher*, 125 F. Supp. 3d at 549. "Good cause is not shown when the amendment could have been timely made." *Interstate Narrow Fabrics, Inc., v. Century USA, Inc.*, 218 F.R.D. 455, 460 (N.C.M.D. 2003) (internal citation and quotation omitted). Further, "[d]efendants cannot show good cause under Rule 16(b)(4) when the facts giving rise to a potential defense were readily observable with reasonable diligence prior to the deadline for the amendment of pleadings set by the scheduling order." *Midsouth Steel, Inc. v. DPR Constr.,*

4

*Inc.*, No. 2:15-CV-4620-RMG, 2017 WL 11458033, at *1 (D.S.C. Mar. 22, 2017) (citing *Nourison Rug Corp.*, 535 F.3d at 29).

In assessing good cause, the Court "focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty, Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631-32 (D. Md. 2003)). There is no good cause when the movant "has not acted diligently in compliance with the schedule." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (internal citation and quotation omitted).

Here, Defendant has not made a showing of good cause for leave to modify the scheduling order. Defendant claims that Daniel Wall made several statements during his deposition that led Defendant to believe Plaintiff may assert that an oral agreement existed between the parties. First, Daniel Wall stated that "[t]here is no final written contract" between the parties. (Docket Entry 42 at 2.) Second, when asked whether "the modifications of the contract . . . would have been done via your testimony today, via email, text, and telephone and in-person communications; correct?," Daniel Wall responded "Yes, sir." (*Id.* at 3.) Third, as Defendant highlighted, Daniel Wall stated in his deposition regarding the modifications, "I think they're all in writing through different text messages and different e-mail and different contracts – different papers that have gone back and forth. I think they're all in writing." (Docket Entry 42-3 at 2-3.) Defendant's assertion that these statements are sufficient to provide Defendant with good cause to bring a statute of frauds defense fails.

Further, as noted by Plaintiff, Daniel Wall's deposition testimony was consistent with Plaintiff's description of events as alleged in the Complaint. The facts that Defendant asserts

5

give rise to Defendant's potential statute of frauds defense were available to Defendant when Plaintiff filed the Complaint. Plaintiff's Complaint clearly alleges that Plaintiff and Defendant made modifications to the February Agreement in 2019 and 2020. (*See* Compl. ¶ 36 ("[Defendant] agreed to certain modifications of the [February Agreement] as a result of its failure to deliver a NEXT Shredder by the end of December 2019 . . . .").) The Complaint does not state that all modifications to the February Agreement were made in writing. (*See id.*) Thus, Daniel Wall's statements during his deposition are consistent with the Complaint's allegation that the February Agreement was modified by the parties. To the extent that Defendant views these statements as giving rise to a statute of frauds defense, the allegations of contract modification as made in the Complaint put the Defendant on notice of this before the deadline to amend. Because Defendant did not bring this motion to amend when Defendant first had this information, Defendant did not act diligently in compliance with the scheduling order. Thus, Defendant has not shown good cause to modify the scheduling order and amend its answer.

Since Defendant cannot demonstrate good cause for granting the motion, the Court need not address Rule 15(a)(2). *See Halpern*, 268 F.R.D. at 274 (ending its analysis of whether Plaintiff could amend its complaint after determining that there was a lack of good cause); *Interstate Narrow Fabrics Inc.*, 218 F.R.D. at 460 ("[Defendant] has not shown 'good cause' under Rule 16(b), and it is consequently not necessary to consider whether [defendant] can meet the more lenient Rule 15(a) standard.").

Thus, Defendant's motion for leave to amend its answer should be denied.

## B. Plaintiff's motion to compel

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff moves to compel Defendant to produce an electronic calculator or spreadsheet (the "Spreadsheet") that Defendant created to help customers determine the return on investment associated with the purchase of a NEXT Shredder. (Docket Entry 35 at 1-2.) Plaintiff initially requested that Defendants produce documents that Plaintiff asserts would have included the Spreadsheet. (Docket Entry 45 at 5). On April 15, 2021, Defendant objected to the request at issue on the grounds that it was irrelevant. (Docket Entry 35 at 2; Docket Entry 45 at 5.) Plaintiff then learned of the Spreadsheet in the August 5, 2021 deposition of Matthew Morrison, the corporate representative for Defendant. (Docket Entry 35 at 2; Docket Entry 35-3.) After the deposition, Plaintiff requested that Defendant produce the Spreadsheet. (Docket Entry 35 at 3.) Defendant did not produce the Spreadsheet. (*Id.* at 4.) Discovery closed on August 14, 2021. (Docket Entry 45 at 5.) Plaintiff filed its motion to compel on September 15, 2021. (*See* Docket Entry 35.) Defendant filed a response in opposition to Plaintiff's motion to compel, asserting that Plaintiff's motion should be denied as untimely. (Docket Entry 45.) Plaintiff has filed a reply brief. (Docket Entry 46.)

Rule 37 of the Federal Rules of Civil Procedure provides that where a party fails to answer an interrogatory, "[a] party seeking discovery may move for an order compelling . . . production." Fed. R. Civ. P. 37(B)(iii). While Rule 37 does not impose a time limit on parties, "it allows a court to establish a reasonable time for a party to file" a motion to compel. *Lane v. Lucent Tech., Inc.*, No. 104CV00789, 2007 WL 2079879, at *3 (M.D.N.C. July 13, 2007). Generally, a motion to compel is untimely if it is filed after the close of discovery. *See id.*; *see*

7

*also Alexander v. Carolina Fire Control*, No. 1:14CV74, 2015 WL 12750444, at *1 (M.D.N.C. May 7, 2015) (denying in part a motion to compel filed after the close of discovery). This is true even where a party learns of a relevant document after the close of discovery. *See Gentry v. Maggie Valley Resort Mgmt., LLC*, No. 1:13-CV-00108-MR-DLH, 2014 WL 12707371, at *1 (W.D.N.C. Apr. 4, 2014) (denying Plaintiff's motion to compel as untimely because it was filed after the close of discovery, even though Plaintiff first learned of the document during a deposition conducted after the discovery deadline.)

Here, despite receiving Defendant's response to its request for production in April of 2021, Plaintiff waited until September 15, 2021, a month after the close of discovery, to file this motion to compel. Because the motion to compel was filed after the close of discovery, it is untimely. Plaintiff asserts that the motion is timely because Plaintiff did not discover the Spreadsheet existed until the deposition of Matthew Morrison on August 5, 2021. While this may be true, Plaintiff still had the opportunity to file a motion to compel as early as April of 2021, and chose not to file this motion until September. Plaintiff's knowledge of a document it believed to be relevant to its request does not change the discovery deadline. *See id.* Thus, Plaintiff's motion to compel is denied.

### C. Defendant's motion to exclude expert opinions of Robert Brewer

Defendant moves to exclude the expert opinions of Robert Brewer (the "Brewer Report"). (Docket Entry 37.) Plaintiff served the Brewer Report on Defendant on April 23, 2021. (Docket Entry 39-2 at 3.) Defendant then retained Daniel Shapiro to create an expert report (the "Shapiro Report") to rebut the Brewer Report. (Docket Entry 39-3.) In its motion, Defendant asserts that the Brewer Report should be excluded from the docket because it

8

"follows exactly the itemization of damages and the description of damages" as set out in Plaintiff's response to an interrogatory and because the Brewer Report's lost profit argument is not calculated with reasonable certainty, lacks support, and is inherently speculative. (Docket Entry 37 at 3-5.) Plaintiff filed a response brief in opposition to Defendant's motion to exclude the expert opinions of Robert Brewer. (Docket Entry 47.) Plaintiff claims that the Brewer Report is not intended to serve as a complete lost profit analysis but is instead limited to specific components of Plaintiff's damages. (*Id.* at 5.) Plaintiff further argues that because the Brewer Report is not an analysis of lost profit, it should not be held to the reasonable certainty standard and that the Brewer Report is not speculative. (*Id.* at 11-15.) Defendant filed a reply brief. (Docket Entry 54.)

Under state law in North Carolina, a party seeking to recover lost profits "must prove such losses with reasonable certainty." *McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 407, 466 S.E.2d 324, 329 (1996) (quotation and citation omitted). "[D]amages for lost profits cannot be based upon hypothetical or speculative forecasts of losses . . . ." *Slate v. Byrd*, No. 1:09CV852, 2013 WL 1103275, at *22 (M.D.N.C. Mar. 15, 2013) (quoting *Team Gordon, Inc. v. Fruit of the Loom, Inc.*, No. 3:06CV201-RJC-DCK, 2010 WL 419952, at *2-3 (W.D.N.C. Jan. 29, 2010)).

Here, Defendant argues that the Brewer Report's lost profit analysis is speculative and incomplete, and thus should be excluded from the docket. However, Plaintiff argues it intended to use the Brewer Report to prove specific components of Plaintiff's damages, not to substantiate the complete lost profit analysis. Regarding specific components of Plaintiff's damages, the Brewer Report provides some insight into Plaintiff's alleged costs. To the extent

9

that Defendant and the Shapiro Report seek to challenge the accuracy or scope of the Brewer Report, the Court determines that challenge would be more appropriately considered before trial by motion in limine or at trial in determining the scope of any testimony that Robert Brewer would be allowed to provide. In other words, at this stage of litigation, there is no basis to exclude the Brewer Report from the docket in its entirety. *See Rayfield Aviation, LLC v. Lyon Aviation, Inc.*, No. 1:11CV274, 2012 WL 3095332 at *8 (N.C.M.D. July 30, 2021) (denying without prejudice motion to exclude expert report at summary judgment stage in order to permit parties to file a motion in limine or limit scope of expert testimony at trial later in litigation). Thus, Defendant's motion to exclude the Brewer Report is denied without prejudice.

### D. Defendant's motion to exclude Plaintiff's untimely discovery

Defendant moves to exclude Plaintiff's Supplementation of Discovery. (Docket Entry 38.) On March 19, 2021, Plaintiff initially served on Defendant its responses to Defendant's first set of interrogatories, including Interrogatory number 8 and number 9 regarding Plaintiff's calculation of costs and damages. (*Id.* at 1.) Plaintiff's response regarding Lost Shredder Business Opportunity included the statement that "[t]he calculated damages above do not include continued trucking from Raleigh to Goldsboro in order to sort the ferrous metal frag from non-ferrous metal frags, which is continuing to occur until such time that Plaintiff receives a downstream separation system for its American Pulverizer shredder." (Docket Entry 48 at 6; Docket Entry 39-1 at 9.) Regarding damage mitigation, Plaintiff's response included the statement that "Plaintiff contracted to purchase a downstream for its American

10

Pulverizer shredder, which it is expected to receive within the next couple of months."
(Docket Entry 48 at 6; Docket Entry 39-1 at 10.)

In a deposition held on July 12, 2021, Daniel Wall, deposed in his individual capacity and as corporate representative for Plaintiff, testified that Plaintiff continued to incur freight expenses. (Docket Entry 48 at 4.) Daniel Wall also testified that he expected the total cost of the Pulverizer system used to mitigate costs would be between $2,500,000 and $2,700,000. (*Id.* at 10.) Defendant deposed Plaintiff's expert, Robert Brewer, regarding his calculation of costs and damages to Plaintiff. (*Id.* at 12.) While the Court set the discovery deadline as August 14, 2021 (*See* Text Order Entered 5/20/2021), the parties agreed to continue discovery and conduct depositions for one additional week ending on August 20, 2021. (Docket Entry 48 at 2.) On August 20, 2021, Plaintiff served Defendant with supplemental responses to Interrogatory number 8 and number 9. (*Id.* at 3.) This supplemental information regards freight costs and incurred from January 1, 2021 through July 31, 2021 and the cost of Pulverizer system used to mitigate Plaintiff's damages. (Docket Entry 38 at 3.) Plaintiff also produced 114 pages of invoices dating from 2020 through early 2021, used to support Plaintiff's mitigation of damages. (*Id.*)

Defendant contends that Plaintiff's supplemental responses to Interrogatory number 8 and number 9 were untimely, added additional damages not previously identified, and added additional information regarding costs that Plaintiff alleges it incurred in an attempt to mitigate damages. (*See id.*) Plaintiff filed a response in opposition to Defendant's motion, arguing that Plaintiff, through discovery responses, put Defendant on notice that Plaintiff would be pursuing costs and damages incurred in 2021, Plaintiff did not use any new damages theories

11

in creating the supplemental responses, the supplemental discovery is timely, and Defendant has suffered no harm due to the supplemental responses. (Docket Entry 48.) Defendant has filed a reply brief. (Docket Entry 55.)

First the Court must determine whether Plaintiff was required to supplement its initial discovery disclosures. Under Rule 26(e), a party who has responded to discovery must timely supplement that response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (quoting Fed. R. Civ. P. 26(e)(1)(A)).

Plaintiff avers it was not in violation of Rule 26(e) because Defendant was already aware of the information contained in Plaintiff's supplemental responses. (Docket Entry 48 at 9-10.) In its initial responses to the interrogatories at issue, Plaintiff put Defendant on notice that Plaintiff's alleged costs and damages were ongoing and continuing to accrue. In the deposition, Plaintiff further made mention of these ongoing damages. However, Plaintiff did not explain how these damages would be calculated and did not provide Defendant with a final total for the amount sought. Then, on August 20, 2021, Plaintiff supplemented its responses to Interrogatory number 8 and number 9 and Plaintiff produced 114 pages of invoices to support the additional damages claimed in the supplemental responses. While Plaintiff's initial response put Defendant on notice that Plaintiff intended to seek additional freight costs and mitigation damages, Defendant was not aware of the cost and damages amounts or how Plaintiff calculated the costs and damages until Plaintiff served its

12

supplemental response on August 20, 2021. Thus, Plaintiff's initial response was incomplete prior to the supplement, and Plaintiff was required to supplement its initial discovery disclosures under Rule 26(e).

Next, the Court must determine whether Plaintiff's supplemental responses were timely. In order to be timely, "supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *EQT Gathering, LLC v. Marker*, No. 2:13-CV-08059, 2015 WL 9165960, at *6 (S.D.W. Va. Dec. 16, 2015) (quoting Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment).

Defendant argues that Plaintiff's supplemental disclosures were untimely. Plaintiff's March 2021 interrogatory responses initially disclosed damages and costs incurred from January through November of 2020. (*See* Docket Entry 39-1.) Plaintiff further provided Defendant with the method Plaintiff used to calculate costs and damages. (*See id.*) In that response, Plaintiff put Defendant on notice that it would continue to accrue freight costs and informed Defendant that Plaintiff was in the process of purchasing the Pulverizer system to mitigate damages. (*See id.* at 25-30.) Then, in Defendant's July 12, 2021 deposition of Daniel Wall, Plaintiff's corporate representative, Plaintiff informed Defendant that Plaintiff believed the final total of the Pulverizer system would be between $2,500,000 and $2,700,000. (Docket Entry 48 at 10.) Finally, on August 20, 2021, Plaintiff supplemented its responses to Interrogatory number 8 and number 9 by providing an update as to the freight costs incurred between January 2021 and July 2021, provided Defendant with a final total for the Pulverizer

13

system, and supported the total cost of the Pulverizer system with invoices. (*See* Docket Entry 39-5 at 9-10.)

Plaintiff used the same method to calculate freight costs incurred from January 2020 through November 2020 when calculating ongoing freight costs incurred during the course of discovery and disclosed in the supplemental response. (*See id.*) Additionally, Plaintiff's final calculation for the cost of the Pulverizer system was $2,621,930.08, within the range Plaintiff provided to Defendant in the July 12, 2021 deposition of Plaintiff's corporate representative. (*See id.* at 10.) Further, Plaintiff made this supplemental disclosure in August, long before trial in this matter. The very nature of Rule 26(e) requires Plaintiff to provide Defendant with supplemental responses regarding ongoing costs and damages that continue to accrue during litigation. This is exactly what Plaintiff has done. Thus, Plaintiff complied with Rule 26(e) in a timely manner. For these reasons, the undersigned denies Defendant's motion to exclude Plaintiff's supplemental discovery.

### III. CONCLUSION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion for Leave to File First Amended Answer (Docket Entry 31) be **DENIED.**

**IT IS ORDERED** that Plaintiff's Motion to Compel Discovery (Docket Entry 35) be **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Opinions of Robert Brewer (Docket Entry 37) be **DENIED** without prejudice**.**

**IT IS ORDERED** that Defendant's Motion to Exclude Plaintiff's Supplemental Discovery (Docket Entry 38) be **DENIED.**

Joe L. Webster
United States Magistrate Judge

January 11, 2022
Durham, North Carolina